**Lawrence B. Stedman, Plaintiff-Appellant, v. Nicholas Spiros, Defendant-Appellee.**

**Gen. No. 11,269.**

Second District, Second Division.

October 19, 1959.

Released for publication November 5, 1959.

70

Hollerich and Hurley, of LaSalle, for plaintiff-appellant.

Pool and Langer, of Ottawa, and Berry and O'Conor, of Streator, for defendant-appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is a suit for personal injuries. The defendant filed a motion to strike the plaintiff's Amended Complaint and dismiss the action, which motion was supported by affidavits. Counsel for plaintiff filed suggestions in opposition to defendant's motion, a motion to strike the defendant's affidavits in support of his motion, and counteraffidavits in opposition to defendant's motion. After hearings the trial court allowed defendant's motion to strike and dismissed the Amended Complaint as amended, and ordered that the plaintiff take nothing by his suit and defendant go hence without day with costs awarded defendant. From this final order of the trial court this appeal has been taken.

Since this appeal arises on the pleadings, it is essential that we outline their contents. Plaintiff's Amended Complaint as amended, upon which plaintiff elected to stand, alleged the following:

1. That on September 11, 1952, and prior and subsequent thereto, the State of Illinois was the owner and in possession of a public park known as Starved Rock State Park, in Deer Park Township, LaSalle County, Illinois, consisting of approximately seven hundred (700) acres, including numerous buildings among

71

which were a Lodge building consisting of lounge, lobby, offices, dining rooms; a Hotel building consisting of some forty-eight rooms; one five-room Guest House; two deluxe cabins, and six double and four single cabins; "that said Lodge building and Hotel building consisted of a main building or buildings, with divers additions thereto, all of which extended in an easterly and westerly direction, with means of ingress and egress on the north and south sides of said Lodge building, and were constructed and used for hotel, inn and restaurant purposes, and to provide lodging, meals, relaxation and enjoyment for the general public; that said Guest House was constructed for and used by the guests of said Lodge and Hotel for the purposes aforesaid, and was situated a short distance southwesterly of said Lodge building; that said cabins were constructed for and used by guests of said Lodge and Hotel for the purposes aforesaid, and were situated as follows: Said deluxe cabins were located just west of said Hotel building, and said single and double cabins were located a short distance east or southwest of said Lodge building; that about fifty feet north of said Lodge building there was a steep precipice with a perpendicular drop of more than one hundred feet; that vehicular approach to said Lodge, Hotel and cabins was only from the south by reason of the fact that said several buildings and the premises in connection therewith were surrounded on the north, east and west sides thereof by the aforementioned precipice.

"2. That on the north side of and adjacent to said Lodge building, there was a patio which extended for a considerable distance along the north side of said building; that the portion of said patio nearest said Lodge building was covered with flagstones; that a concrete sidewalk extended in an easterly direction from said flagstones; that the portion of said patio

72

north of said sidewalk and between said sidewalk and said precipice consisted of a mowed lawn or grass plot; that the surface of the ground between said precipice and said sidewalk was sandstone, and was of a soft and crumbling nature; that the main doors on the north side of said Lodge opened directly upon said patio; that from said patio an unobstructed view could be had of Starved Rock, Starved Rock Dam, and the Illinois River Valley as far as the eye could see; that at all of the times herein mentioned, patrons of said Lodge, Hotel and cabins were in the habit of going to the aforementioned patio, lawn and grass plot, and using the chairs and benches there, for their comfort, convenience and enjoyment, as hereinafter set forth, and in order to see and enjoy the scenic beauty of the said park and its surroundings; that in the nighttime the said precipice and the dangerous condition there existing was not apparent or obvious to persons on said lawn; that all of the matters and facts herein set forth were then well known to the defendant, or by the exercise of a reasonable degree of care would have been known to him.

"3. That said patio was constructed and was thereafter maintained for the use, pleasure and enjoyment of the patrons of said Lodge, Hotel and cabins; that in the north side of said Lodge building there are two or more large doors which furnished means of egress from said Lodge building to said patio, and ingress from said patio to said Lodge."

4. That on December 9, 1947, the defendant entered into a certain lease agreement with the State of Illinois whereby said State of Illinois leased to defendant for the term of five years the "aforementioned Lodge building, Hotel, Guest House, cabins, and certain other concessions" for a specified rental, which lease was in effect on September 11, 1952.

73

5. That on September 11, 1952, and prior thereto, large numbers of guests patronized the Lodge, Hotel, cabins, and restaurant, and numerous chairs and benches "had been placed and maintained" on said patio both on the paved portion thereof and on the lawn portion thereof.

6. That on September 11, 1952, plaintiff registered and became a paying guest of the defendant at said Lodge and was assigned a room in one of the cabins.

7. That on said date, about 8:30 p. m., the plaintiff and some business associates, after dining in the restaurant of the Lodge, went upon the lawn or grass plot; that plaintiff was standing on said lawn "about 15 feet north of said cement sidewalk" and was pointing out to his associates places of interest as shown by the lights therefrom.

8. That the plaintiff had never previously been a guest of the Lodge and had no knowledge or familiarity with the location of the precipice and of the dangerous condition there existing.

9. That the defendant well knew the patio, lawn and grass plot, and the chairs and benches thereon were constantly occupied and used by the Lodge, Hotel and cabin patrons.

10. That it was the duty of the defendant to "see that the aforementioned patio including said lawn or grass plot was properly lighted before patrons were permitted to go thereon" and it was further his duty to "post notices or erect warning signs or otherwise warn the plaintiff or other patrons" of the dangerous conditions there existing.

11. That the defendant disregarded his duty in negligently failing to see that the patio, lawn and grass plot were properly lighted at night, and negligently failed to post any notices or signs or otherwise warn plaintiff and other guests of the Hotel of the dangerous condition there existing.

74

12. That defendant knew, or should have known, all the facts alleged hereinbefore.

13. That plaintiff was in the exercise of due care and caution for his own safety.

14. That on the day in question, while plaintiff was a guest of the Hotel and standing on the lawn at a point fifteen feet north of the cement sidewalk and at a point close to the edge of the precipice, when it was so dark that he could not see the precipice or the edge thereof, the soil upon which he was then and there standing "suddenly slipped from under his feet and gave away," whereby plaintiff lost his balance and fell over the edge of the precipice, dropping a distance of more than fifty (50) feet, causing him severe and permanent injuries.

15. That as a direct and proximate result of the negligence of the defendant, severe injuries set forth in detail were suffered by the plaintiff to his damage.

Defendant's motion to strike the Amended Complaint and dismiss the action was based on the following grounds:

1. The Amended Complaint was substantially insufficient in law to state a cause of action.

2. The Amended Complaint failed to allege facts creating a duty on defendant to perform the acts demanded of him by the plaintiff.

3. The acts or omissions complained of occurred on premises situated between the northerly side of the Lodge building in Starved Rock State Park and a precipice situated just a short distance to the north thereof. The Amended Complaint does not allege facts to place the duty on the defendant to fence, guard, light, or otherwise maintain said parcel of land.

4. The Amended Complaint does not allege that the premises demised to defendant by the State of Illinois included the premises located between the northerly side of the Lodge building and the edge of the preci-

pice, and said premises remained in the possession and control of the State of Illinois for the use and benefit of the general public. Defendant was never obliged to maintain said premises between the northerly side of the Lodge building and the precipice.

The defendant supported his motion with various affidavits, his motion to dismiss being based both on Section 45 and Section 48 of the Civil Practice Act (Ill. Rev. Stats., Ch. 110, § 45, 48). The affidavits in support of the motion set forth the lease agreement, photographs of the Lodge site, lengthy verified statements by the defendant and an employee as to the physical facts concerning the Lodge building and surrounding terrain, as well as evidentiary matters concerning the occurrence which befell the plaintiff on September 11, 1952. While the trial judge considered that the defendant properly asserted his defense by means of a motion to dismiss under Section 48 of the Practice Act, a careful study of the record convinces this Court that Section 48 could not properly be availed of in this case. The defense which the defendant sought to raise does not come within any of the nine enumerated grounds referred to in Subsection (1) of Section 48. Defendant's asserted defense is not affirmative matter which would bring it within the scope of Subparagraph (i) of Subsection (1) of Section 48, inasmuch as defendant's affidavits consisted largely of evidence upon which defendant proposed to contest facts stated in the Complaint. (See John v. Tribune Co., 19 Ill.App.2d 547, 553.) That conclusion does not dispose of this appeal, and it follows that disposition of the defendant's motion must be made upon the allegations of plaintiff's Amended Complaint as amended. (Hansen v. Raleigh, 391 Ill. 536, 550.) The trial judge filed a memorandum opinion in which he held that the defendant's duty of care did not extend beyond the physical premises over which the defend-

ant had control. The plaintiff earnestly maintains that the defendant as a hotel proprietor had (1) a duty to warn his guests of the dangerous conditions existing by reason of the natural precipice located "about fifty (50) feet north of the Lodge building," and (2) a duty to "see that" the patio and surrounding grass plot leading to the precipice were properly lighted at night. In the view we take of this case, the sufficiency of the plaintiff's Complaint revolves around the question whether defendant had these duties which plaintiff contends that he had.

Numerous cases involving the liability of a hotelkeeper or innkeeper for injury to his guests have been cited to us by the parties, and our independent research has directed our attention to additional authorities, but no decision has been cited or found with facts approximating the factual situation in the instant case. One of the leading cases in Illinois is the case of Pollard v. Broadway Cent. Hotel Corp., 353 Ill. 312. There plaintiff sued the defendant hotel corporation to recover for personal injuries sustained by her as a result of falling or tripping over an "offset" in the floor of a corridor in the hotel building of the defendant. The hotel had two entrances, one entrance was from Broadway Street and the other from Fourth Street in East St. Louis, Illinois. The entrance from Fourth Street led into a vestibule and thence into a corridor leading into the lobby of the Hotel. The corridor, some sixty feet in length, contained two offsets or steps approximately six inches in height and about sixteen feet apart. The defendant corporation had constructed the hotel and owned and was in possession of the same at the time plaintiff sustained her injuries. The Supreme Court in the Pollard case described the duty of a hotelkeeper in the following language, pp. 319, 320:

77

"The proprietor of a hotel to which he invites the public to come in order that he may make gains thereby has no right to permit the existence of such dangerous and unguarded offsets as this one was, so that the slightest mistake on the part of the guest might result in injury to him. (Hayward v. Merrill, 94 Ill. 349; Chicago City Railway Co. v. Fennimore, 199 id. 9; Pauckner v. Wakem, 231 id. 276; Downing v. Merchants Nat. Bank of Greene, 192 Iowa 1250, 184 N.W. 722, 20 A. L. R. 1138; Pelton v. Schmidt, 194 Mich. 345) Under the law of this State the defendant owed a duty to the plaintiff, who was in its hotel as a paying guest, to exercise reasonable care and prudence to provide a safe and suitable entrance to the hotel and have such entrance so constructed and maintained that guests would not be liable to fall over or trip down a step by reason of the misleading view afforded by the floor of the entrance to the hotel building. The plaintiff having entered the hotel by means of the corridor in question and having parked her car near such entrance with the knowledge of the agent of the defendant, it was only natural that she should seek to leave the hotel by the same entrance through which she came, and the defendant should have anticipated that fact and kept the corridor lighted or have warned the plaintiff of the steps in such corridor. The law does not charge one with anticipating dangers and negligent conditions, but he may assume that others have done their duty to give proper warning of hidden dangers. (Chicago City Railway Co. v. Fennimore, supra) The plaintiff was a stranger in the hotel, and as such had a right to assume that the entrance to the hotel, maintained for the purpose of carrying on the hotel business of the defendant, would be maintained in such condition as to make it reasonably safe for the guests of the hotel, and that such guests would not be liable to step into dangerous pitfalls by reason of the con-

78

struction of the floor of the corridor entering the hotel. . . ."

■ While defendant contends that a hotelkeeper is in a different category from other proprietors of business establishments, the Illinois decisions have uniformly held that the duty of a hotelkeeper towards his guests is substantially the same as the duty of other business proprietors to their business invitees. Pauckner v. Wakem, 231 Ill. 276, involved a suit for personal injuries brought against a warehouse company. The plaintiff had come to the warehouse to obtain certain pieces of machinery stored there for his employer. When he reached the warehouse the plaintiff was conducted down a long aisle where he was shown the goods. The plaintiff and a companion removed the box to a nearby door whereupon the plaintiff left the box to seek a rest room. In passing down the unfamiliar passageway of the dimly lighted warehouse leading from the goods to the outside, the plaintiff fell through an unprotected elevator shaft and was severely injured. The court held that the plaintiff was lawfully upon the premises of the warehouse by implied invitation; that the warehouseman owed him the duty to exercise due care for his safety while on the premises; that the invitation to go to the warehouse for goods must be held to and include all the space occupied by the goods, together with necessary passageways in or out of the warehouse. In this case the unguarded elevator shaft into which the plaintiff fell was in the open space or passageway through which one would necessarily have to pass in order to get the goods stored immediately east and south of the elevator.

In Kalil v. Wolldenroot Operating Co., 341 Ill. App. 58, plaintiff sued for personal injuries incurred while walking across a metal vault door in a Chicago sidewalk. Plaintiff sued the owner of the building to

79

which the vault door led, the lessee of a corner restaurant in the building, and the lessee of the balance of the building operated as a hotel. At the close of plaintiff's case, the trial court directed verdicts for the lessees. With reference to the hotel corporation the Appellate Court, First District, observed that there was no evidence or justifiable inference that the hotel corporation "possessed or controlled in any way or to any extent the vault door or that part of the basement" to which the door led and that it had no obligation with reference to the vault door so that judgment in favor of the hotel corporation was correct.

In Mauzy v. Kinzel, 19 Ill. App. 571, the action was brought by a guest in defendant's hotel to recover damages for injuries sustained by the plaintiff as a result of falling into an unguarded elevator shaft in the hotel. At an angle in the hall from which plaintiff's room opened there was a short hall containing an opening leading into the elevator shaft, and the opening contained no door or barricade. This short hall leading to the elevator was used by the defendant to store articles of furniture, but he did not use the elevator. There was evidence that the defendant knew that the door to the elevator shaft was left open periodically by persons who repaired the elevator. During the night plaintiff, seeking the bathroom, found the opening in the elevator and mistaking it for a door stepped in, falling to the bottom of the shaft and receiving injuries. The court held that, although plaintiff had no actual control of the short hall and the elevator shaft itself, nevertheless, because of their proximity to the main hall which was under defendant's control, under the conditions there present there was a duty upon the hotelkeeper to bar or close up in some fashion the entrance to the small hall and thus prevent hotel guests from accidentally entering the passage in darkness and proceeding into the open shaft.

■ The Illinois cases hold that a defendant's duty to a business invitee is a duty to exercise reasonable care for the invitee's safety while he is on that portion of the premises required for his purposes. Toward the invitee the owner of premises must use reasonable care and caution to keep the premises reasonably safe for the use of such invitee. Geraghty v. Burr Oak Lanes, Inc., 5 Ill.2d 153, 157. The possessor of premises is under the duty to provide reasonably safe means of egress and ingress for the invitee. Ellguth v. Blackstone Hotel, Inc., 408 Ill. 343; to the same effect, 28 Am. Jur., Innkeepers, Section 57, pages 579, 580; 43 C. J. S. Innkeepers, Section 22, page 1176 et seq.

Exhaustive research not only among Illinois decisions but decisions of other jurisdictions, texts and treatises, has failed to reveal any authority for a cause of action upon the facts alleged in the plaintiff's Amended Complaint.

■■ The principles applicable in testing the sufficiency of a complaint upon a motion to strike and dismiss are too well known to require citation of authority. The motion to strike or dismiss admits the truth only of facts properly pleaded, as distinguished from conclusions, and every allegation is to be taken most strongly against the pleader. Plaintiff should always plead facts sufficient to make out a *prima facie* showing that the conclusion of the pleader is warranted. Nagel v. Northern Illinois Gas Co., 12 Ill.App. 2d 413.

Much of the plaintiff's Amended Complaint consists of conclusions devoid of supporting facts which would indicate that the conclusions are entitled to any presumption that they are warranted. Reducing the Complaint to its substance, it alleges the following facts: The plaintiff, while a guest of the defendant in a cabin operated in conjunction with defendant's Lodge

81

Hotel building and after having dined in the defendant's dining room in the Lodge building, ventured forth at 8:30 p. m. with some business companions to view the scenery through doors on the north side of the Lodge building. Plaintiff advanced out onto a flagstone patio immediately north of the Lodge building, walked an unstated distance eastwards on a concrete sidewalk and then proceeded north from the said sidewalk onto a lawn or grassy plot extending northward from the sidewalk to the precipice. Proceeding to a point at or near the edge of the precipice, which was approximately fifty (50) feet north of the Lodge building, the plaintiff pointed out to his companions various objects of interest along the Illinois River whose lights identified them against the darkness. While standing on the lawn about fifteen (15) feet north of the cement sidewalk and approximately fifty (50) feet north and an undetermined distance east of the Lodge building, the soil upon which plaintiff was standing "suddenly slipped from under his feet and gave away" and he fell into the precipice. Plaintiff avers that the patio and surrounding area were not lighted and that defendant failed, first, "to see that" the area was properly lighted, and secondly, to warn plaintiff and his other guests of the precipice.

█ Plaintiff does not allege in his Complaint that the defendant had any possession or control, as lessee or otherwise, over the grassy plot where the plaintiff was standing immediately prior to his unfortunate fall. In fact, plaintiff admits that the lease from the State of Illinois to defendant did not include the place in question and we cannot assume otherwise. The Complaint does not allege that the flagstone patio, benches or chairs were maintained by, or were in any manner under the control of, the defendant, and we must therefore assume the fact to be otherwise.

82

Defendant has urged in the trial court and this Court, and the trial judge agreed with defendant's contention, that the duty of care owed by a possessor of land to a business invitee, whether he be a hotel guest or otherwise, is not extended beyond the physical premises over which the defendant has possession or control. The decisions in Illinois, the most pertinent of which have been cited previously in this opinion, impose upon the defendant the duty to exercise reasonable care to keep in a safe condition those portions of the premises included within the invitation to the invitee, including reasonably safe means of ingress and egress, even where the mode chosen is not the customary one but one which is allowed by the owner, Packard v. Kennedy, 4 Ill.App.2d 177. The issue presented here is how far beyond the premises over which the defendant had possession and control does defendant's duty of due care extend to provide a reasonably safe means of ingress and egress for plaintiff. Clearly, if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us. Decisions to which we have adverted, such as Pauckner v. Wakem, 231 Ill. 276, and Mauzy v. Kinzel, 19 Ill. App. 571, involved factual situations similar to the hypothetical example just described. In the Pollard case and the balance of the cited cases the plaintiff was upon premises directly under the possession and control of the defendant, which fact obviously distinguishes them from the case at bar.

This accident occurred in a seven hundred acre park located along the Illinois River, containing all the scenic attractions and potential dangers which customarily are to be found in a park of this kind. Defendant could not, of course, be expected to warn

83

against the innumerable hidden dangers in a seven hundred acre park, nor could he be expected to light those same potentially dangerous places during the darkness or when visibility is restricted.

We attach no little significance to the fact that the dangerous condition, which directly accounted for plaintiff's injuries, was a natural condition of the terrain, as distinguished from an artificial or man-made condition.

██ The Restatement of Torts, in treating the general subject matter with which we are concerned in the present case, indicates that liability is imposed only on persons who are "possessors of land," as defined in the Restatement, with but one minor exception to which we shall presently refer. A "possessor of land" is there defined in substance as a person who has or has had occupancy or control of land. Section 343 of the Restatement pertains to liability of business visitors by a "possessor of land" and provides:

"§ 343. Dangerous Conditions Known to or Discoverable by Possessor.

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

84

> "(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

Section 343 just set forth is restricted to the "possessor of land."

Section 363 of the Restatement of Torts, which would more nearly apply to the case at bar, reads as follows:

"§ 363. Natural Conditions.

"Neither a possessor of land, nor a lessor, vendor or other transferor thereof, is subject to liability for bodily harm caused to others *outside the land* by a *natural condition* of the land other than trees growing near a highway." (Italics supplied)

Section 363 refers to the liability of a possessor of land, lessor, vendor or transferor for a natural condition present on *his* land, not on land possessed or occupied or controlled by another. Therefore, Section 363 does not describe the facts alleged in the instant case. However, it would seem to follow from Section 363 that the case at bar is an even clearer case of non-liability than the factual situation described in Section 363 of the Restatement. In our opinion, Section 363 tends to support defendant's position. The plaintiff places reliance upon Rudolph v. Elder, 105 Colo. 105, 95 P2d 827. In that case, after arriving and registering at a hotel, plaintiff was advised by a hotel employee and later by an employee in a nearby independently operated garage, to store her automobile in that garage and to return to the hotel by means of a commonly used short route. Returning to the hotel by the suggested short route, plaintiff entered a rear door in the hotel and in the darkness fell into a freight elevator shaft and was severely injured. The Supreme

Court of Colorado upheld a verdict in favor of the plaintiff, observing that a hotelkeeper's duties are to keep his premises reasonably safe for the use of his patrons and that that duty extends to all portions of the premises to which a guest may be reasonably expected to go. We would only point out that in the Rudolph case the plaintiff was upon the defendant's premises at the time of the occurrence and that, therefore, because he had possession and control of the premises in question, it was logical to impose a duty upon him to guard and light the area, particularly when the evidence tended to show that the route used by plaintiff was commonly used by guests. In the present case, the area upon which plaintiff ventured forth and met severe injuries was not occupied or controlled by the defendant and was not under his jurisdiction, but rather that of the State of Illinois. To hold defendant liable upon the facts stated in the Amended Complaint would be a radical departure from existing law in this State which we regard as sound.

The briefs have raised certain additional issues, but in view of the conclusion we have reached, it is not necessary to extend this opinion by a discussion and decision of those issues.

The judgment of the Circuit Court of LaSalle County is, therefore, affirmed.

Affirmed.

CROW and WRIGHT, JJ., concur.