DIANE ESSER, Plaintiff-Appellant, v. JOSEPH McINTYRE, Defendant-Appellee.

First District (6th Division)    No. 1—93—0152

Opinion filed October 28, 1994.—Rehearing denied December 21, 1994.

612

Robert A. Chapman, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, Jane M. McFetridge, Mark M. Burden, and Donna Williams, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:
The plaintiff, Diane Esser, brought an action against the defendant, Joseph McIntyre, for injuries she suffered when she slipped and fell on unpopped popcorn kernels that the defendant allegedly spilled. The dispositive issue is whether the judge properly instructed the jury on the proper standard of care. A jury returned a verdict for the defendant.

On October 18, 1983, the plaintiff travelled to Acapulco, Mexico, with Joseph O'Brien, Sr., and two other couples, Joseph McIntyre, Susan Pence, Don Fett and Joanne Walden. At that time, McIntyre lived in Wilmette, Illinois, and Diane Esser lived in Chicago, Illinois.[1] Through a mutual friend, Eva Myers, the plaintiff had met O'Brien once before the trip. The plaintiff met the other members of their group for the first time at O'Hare Airport. Prior to the trip, McIntyre, O'Brien, Fett, Pence and Walden knew one another.

The group stayed in a villa at the Villa Vera Hotel in Mexico. McIntyre and O'Brien had stayed in the same villa on three previous occasions. Pence had accompanied them on the second and third trips, and Fett had joined them for the third trip. In October 1983, the villa was reserved in McIntyre's name, and the three men split the bill for the villa. O'Brien paid for the plaintiff's plane ticket, meals and accommodations at the villa.

_____
[1]McIntyre continued to live in Illinois during the period of this lawsuit. Esser lived in Illinois until February 1984, when she moved to Utah. She returned to Illinois in June 1986.

The rooms in the villa were on multiple levels. On the lower level was a bedroom, where the plaintiff and O'Brien stayed. A few stairs above that level was a terrace area. Above the terrace level, there was a pool area. On the level above the pool area, there was a common dining area, kitchen/bar area, living room and stairs leading to the two upstairs bedrooms, where the other two couples stayed. There were several entrances to the villa, and there were no doors or gates that separated the common areas of the villa from the hotel grounds. Each bedroom door had a lock. McIntyre believed the villa was privately owned because some doors and cabinets in the villa were locked and inaccessible to his group.

McIntyre described the housekeeping services at the villa as "excellent." He believed the housekeepers would come in the middle of the night because, in the morning, the common areas would be clean, the pool would be clean and there would be clean towels on the chairs in the common area. Pence also noticed that, every morning, the villa was clean, room service dishes were gone and there were clean towels. In addition, Pence testified: "[T]here were always staff walking around, day and night. They would just come up now and then. Because it's outside, anybody can walk through. We always saw staff people, changing light bulbs, checking this, taking bugs out of the pool."

The plaintiff testified that the group arrived at the villa during mid-afternoon. They went out to dinner, where drinks were served. At about 11 p.m., the plaintiff and O'Brien went to bed and locked their bedroom door. Around midnight, the other two couples pounded on the plaintiff's bedroom door and told her and O'Brien to come out to party with them. The plaintiff believed they were intoxicated. The plaintiff and O'Brien remained in the bedroom.

The plaintiff awakened at around 7 a.m. She dressed herself and went onto the deck area to read. She then went to the kitchen area to use the telephone to order coffee. On her way to the telephone, she slipped on unpopped popcorn kernels on the glazed tile floor. The plaintiff fell on her spine, injuring her neck, lower spine and left leg. After she fell, she noticed that there were kernels in the kitchen, hall and dining area.

When McIntyre came downstairs 15 to 30 minutes later, the plaintiff asked him why someone did not clean up the kernels. The plaintiff testified on direct examination that McIntyre said, "When we opened the bag, it spilled and we tried to look for something to clean up." On cross-examination, the plaintiff testified that McIntyre said, "[G]ee, I'm sorry, I spilled the popcorn, and we tried to look for a broom." McIntyre then called housekeeping, and the manager of

the hotel, a houseboy and a housekeeper came to remove the spilled popcorn.

O'Brien, McIntyre and Pence testified that they did not see the plaintiff fall and that, during the Acapulco trip, she did not claim that she fell. Joanne Walden testified that the plaintiff did not complain about falling until the middle of the trip.

There is also a dispute concerning whether or not there was popcorn in the villa during the October 1983 trip. The plaintiff claims that McIntyre brought popcorn to the villa from Chicago. McIntyre denies bringing any popcorn to the villa, and he denies that he or anyone in the group brought popcorn to the villa or bought popcorn in Mexico during the October 1983 trip. Fett and O'Brien also testified that they never saw popcorn in the villa during the October 1983 trip. Pence and Walden testified that they did not see any popcorn in the villa the night they arrived.

When she returned, the plaintiff visited her doctor in Chicago, and she contacted Fett and McIntyre to ask them to help her with her medical bills; they refused. The plaintiff had back surgery in October 1984 and January 1991. On August 14, 1985, the plaintiff filed a complaint against Joseph McIntyre and Don Fett. In her complaint, the plaintiff alleged that (1) the defendants controlled the area where she fell; (2) they had a duty of ordinary care to keep and maintain this area in a reasonably safe condition; (3) they negligently allowed or caused popcorn kernels to drop upon the tiled floor; (4) they negligently failed to remove the kernels or to warn the plaintiff of them; (5) they failed to call housekeeping to remove the kernels; and (6) as a result the plaintiff was injured.

Both Fett and McIntyre filed motions for summary judgment. The judge denied these motions on September 9, 1991. The trial began on April 28, 1992. On May 5, 1992, the plaintiff filed a motion to voluntarily dismiss Don Fett with prejudice. The judge granted this motion.

On May 4, 1992, the defendant, McIntyre, presented two motions for a directed verdict. In one, he claimed that Mexican law should apply and that the plaintiff did not have a cause of action under Mexican law. In the other, the defendant argued that the plaintiff had not shown he was willful and wanton, and, even if the applicable standard of care were reasonable care, the plaintiff could not show that the defendant owed her a duty of care. The judge denied both of these motions. He concluded that Illinois law should apply because the parties' relationship was based in Illinois. He also decided that the defendant owed the plaintiff only a duty to refrain from willful and wanton conduct. The judge reasoned that, since the men had

paid for the villa, they were occupiers of the villa, and the women were "at best social invitees."

After the judge made this ruling, the parties tendered jury instructions. At the jury instruction conference, the plaintiff submitted instructions on a standard of ordinary care, but the judge refused these instructions. After the judge instructed the jury that the defendant owed the plaintiff a duty to refrain from willful and wanton conduct, the jury returned a verdict for the defendant.

As a preliminary matter, we reject the defendant's contention that we should affirm the judge's ruling on the basis that Mexican law applies. The plaintiff agrees that she would not have a cause of action under Mexican law.

■ In order to determine choice of law questions, the Illinois Supreme Court has adopted the most significant relationship approach. (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) To determine which State has the most significant relationship with the lawsuit, Illinois courts will examine the following factors: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Miller v. Hayes* (1992), 233 Ill. App. 3d 847, 849, 600 N.E.2d 34.

In personal injury cases, although the accident occurred outside of Illinois, Illinois courts have applied Illinois law when the parties are residents and domiciliaries of Illinois because "Illinois has a significant and substantial interest in deciding cases and controversies between Illinois parties." *Kwasniewski v. Schaid* (1992), 153 Ill. 2d 550, 556, 607 N.E.2d 214 (holding that Illinois has a more significant relationship to a suit involving an accident in Wisconsin and parties who were residents and domiciliaries of Illinois); see also *Miller*, 233 Ill. App. 3d at 850-52 (holding that Illinois has a more significant relationship to a suit involving an accident in Colorado and parties who were residents and domiciliaries of Illinois).

■ As in these cases, Illinois law governs the disposition of the case here. Although the plaintiff claims that the defendant spilled popcorn and that she fell in Mexico, the record supports a conclusion that the parties are residents and domiciliaries of Illinois and that their relationship, if any, is centered in Illinois. Illinois has an important contact with the parties and the occurrence in this case because, as the place of the parties' domicile, Illinois will feel the social and economic impact of this lawsuit. It is conceded by both parties that the plaintiff would not have a cause of action in Mexico. (See *Miller*, 233 Ill. App. 3d at 852.) Illinois, therefore, has a more significant relationship to the lawsuit than Mexico.

Under Illinois law, we find that the judge's instruction on willful and wanton conduct was reversible error. The judge rejected the plaintiff's instructions on ordinary care because he decided that the common law of premises liability would govern the standard of care.[2] The judge reasoned that, as a matter of law, the defendant was an "occupier" of the common area where plaintiff claims she fell, and the plaintiff was a "social invitee." The judge concluded that, under the common law of premises liability, therefore, the defendant owed the plaintiff only a duty to refrain from willful and wanton conduct. We disagree with the judge's conclusion that the plaintiff was a "social invitee," and, therefore, his conclusion that the defendant owed a duty only to refrain from willful and wanton conduct.

■ "Under general common law negligence principles, all persons owe a duty to all others to use ordinary care to guard against injuries resulting from the reasonably foreseeable consequences of his acts." (*Ono v. Chicago Park District* (1992), 235 Ill. App. 3d 383, 389, 601 N.E.2d 1172.) One in possession and control of real property owes his social guests a lesser standard of care as to the condition of that property. Social guests are licensees (*Barmore v. Elmore* (1980), 83 Ill. App. 3d 1056, 403 N.E.2d 1355), and, under the common law of premises liability, a possessor of land owes them only a duty to refrain from willful and wanton conduct concerning conditions of his land. *Harkins v. System Parking, Inc.* (1989), 186 Ill. App. 3d 869, 542 N.E.2d 921.

The key to a duty under the common law of premises liability is possession and control. In order for a defendant's duty of care to arise under the common law of premises liability, the defendant must have possession and control of the real property on which the tort occurred. (*Simpson v. Byron Dragway, Inc.* (1991), 210 Ill. App. 3d 639, 569 N.E.2d 579.) In this case, for the defendant's standard of care to arise under a premises liability theory rather than under a general negligence theory, he must have possessed and controlled the common areas of the villa.

■ The law of premises liability does not dictate the standard of care the defendant owed to the plaintiff in this case because the defendant did not possess and control the property where the plaintiff allegedly fell. Under Illinois law, a hotel guest is a business invitee of the hotel. (*Stedman v. Spiros* (1959), 23 Ill. App. 2d 69, 161 N.E.2d 590.) A hotel is, therefore, subject to liability for physical injury to its guests from a condition on its land if, by the exercise of reasonable

---

[2]The plaintiff's accident occurred prior to the effective date of the Premises Liability Act. Ill. Rev. Stat. 1989, ch. 80, pars. 301 through 304.

care, it should have discovered the condition and failed to exercise reasonable care to protect the guest from this condition. See *Amaral v. Woodfield Ford Sales, Inc.* (1991), 220 Ill. App. 3d 357, 362, 581 N.E.2d 19, quoting Restatement (Second) of Torts § 343, at 215-16 (1965); see also *Stedman,* 23 Ill. App. 2d at 81 ("[A] defendant's duty to a business invitee is a duty to exercise reasonable care for the invitee's safety while he is on that portion of the premises required for his purposes").

Although we have found no case in this jurisdiction that specifically addresses premises liability in a suit brought by a guest of a hotel guest, courts in other jurisdictions have held that the guest of a hotel guest is also an invitee of the hotel: "[A]n innkeeper ordinarily owes to a guest of his guest the same degree of care as to such guest himself." (43A C.J.S. *Inns, Hotels, & Eating Places* § 26, at 852-53 (1978); see, *e.g., Steinberg v. Irwin Operating Co.* (Fla. 1956), 90 So. 2d 460; *Ortner v. Linch* (Fla. Dist. Ct. App. 1960), 128 So. 2d 152; *Brown v. Southern Ventures Corp.* (La. Ct. App. 1976), 331 So. 2d 207; *Ball v. Atlantic City Ambassador Hotel Corp.* (N.J. 1948), 57 A.2d 362; *Kandrach v. Chrisman* (Tenn. Ct. App. 1971), 473 S.W.2d 193.) The cases holding that hotel guests are invitees of the hotel and cases holding that guests of hotel guests are invitees of the hotel demonstrate that the hotel, not the guest, is the possessor of the real property to which the guest and his guests have access.

In addition, the undisputed facts of this case indicate that the defendant was not a possessor of the common areas of the villa. A defendant is not a possessor of land for purposes of tort liability if he does not control the land or intend to control the land. (*Collins v. Mid-America Bag Co.* (1989), 179 Ill. App. 3d 792, 535 N.E.2d 48 (a licensee did not control and had no intent to control land); see also Restatement (Second) of Torts § 328E, at 170 (1965) (a possessor of land is "a person who is in occupation of the land with intent to control it").) The defendant here did not control the common area where Esser allegedly fell, nor did he intend to control it.

Although the defendant reserved the villa in his name, he shared the villa with five other people, and he shared expenses with two others. The defendant also did not control access to the common areas of the villa. This area was open to the people with whom he shared the villa, to the hotel staff and to anyone else on the hotel grounds. As the defendant and Pence testified, no doors or gates separated this common area from the hotel grounds, and anyone could walk through this area.

In addition, the defendant did not maintain the common area. He and Pence noted that it was the practice of the hotel staff to enter

the common area each night to perform routine maintenance, such as cleaning, removing dishes and changing light bulbs. The staff often entered without the knowledge of the guests in the villa.

■ Common law principles of premises liability do not govern the defendant's duty in this case, therefore, because he was not a possessor of the common areas of the villa. As a result, it was improper for the judge to instruct the jury on the lesser standard of care reserved for possessors of land. If the defendant owed the plaintiff a duty, this duty would stem from general principles of negligence.

"A jury instruction which erroneously defines the standard of care to be applied in a personal injury case constitutes reversible error." (*Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 45, 502 N.E.2d 480 (reversing because the judge used an argumentative and prejudicial instruction which did not accurately state the law); see also *In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 492 N.E.2d 884 (reversing because the instruction implied that an executor's failure to diversify could, by itself, constitute a breach of his fiduciary duty).) An error in instructions does not require reversal unless it misleads the jury. (*King v. Casad* (1984), 122 Ill. App. 3d 566, 461 N.E.2d 685 (an error in instructions, here failure to submit the minor standard of care, is reversible error if it will mislead the jury).) Nevertheless, the error here mandates that we reverse and remand plaintiff's case for a new trial. The judge's instruction on the standard of care was not merely misleading; he instructed the jury on the incorrect standard of care.

■ Furthermore, we strongly disagree with the defendant's claim that the plaintiff waived her assertion of error concerning the judge's instruction on the standard of care. It is true that a party may not argue on appeal that the judge should have given the jury different instructions unless, at trial, he tenders instructions containing the statement of the law he asserts is correct. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817.) But there was no waiver here because the plaintiff tendered instructions describing the defendant's duty as one of ordinary care. The judge refused these instructions. The plaintiff later tendered an instruction that stated that the defendant was willful and wanton, but she did so only after the judge had ruled that the law of premises liability would govern the standard of care.

The plaintiff also assigns as error the judge's ruling permitting the defendant to testify that a witness for the plaintiff was a prostitute. Because this question may arise at a retrial, we will address it.

The defendant testified that he never brought popcorn into

Mexico and that he suffers from diverticulitis which prevents him from eating popcorn. The plaintiff sought to introduce testimony contradicting the defendant's testimony.

Eva Myers was the plaintiff's only witness, other than herself. Myers' testimony connected the defendant to eating popcorn at the Villa Vera Hotel. In 1982 Myers accompanied O'Brien to Acapulco. They stayed at the Villa Vera Hotel with the defendant and others. Myers testified that they had popcorn every night and that the defendant always made sure they had popcorn because he loved it the most.

Eva Myers' testimony was in the form of an evidence deposition because she lives in Jamaica. The transcript of this deposition was read to the jury. The attorneys for Fett and McIntyre did not ask Myers any questions at her evidence deposition. At the defendant's discovery deposition, Fett's attorney asked the defendant what Eva Myers did for a living. He answered that she was a prostitute.

At a sidebar conference at the trial, Fett's attorney asked the judge's permission to ask the defendant about Myers' profession. The plaintiff's attorney objected, but the judge allowed the questioning. Fett's attorney asked the defendant if he knew what Eva Myers did for a living. The defendant answered that she was a prostitute. It had been disclosed at the sidebar conference before the defendant was permitted to testify that his knowledge of Myers' occupation was based on the fact that O'Brien, the defendant's friend, paid Myers for her services.

■ It appears to be the rule that a witness may be cross-examined about whether the witness is a prostitute. (See *People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420.) But a negative answer by the witness "ends the inquiry, as evidence cannot be introduced to refute the witness." (See S. Gard, Illinois Evidence Manual § 23:11, at 482 (2d ed. 1979); see also Fed. R. Evid. 608(b).) In this case, however, Myers was never asked the question at her evidence deposition (or any questions by the defendants' attorneys); consequently, she was never given an opportunity to deny it. On that basis the evidence was improper. Moreover, it appears that the defendant's testimony was based on what someone had told him about the occupation of Myers and was, therefore, hearsay. On retrial, the evidence should not be permitted.

For these reasons, we reverse the judgment of the trial court and remand this case for a new trial.

Reversed.

McNAMARA and GIANNIS, JJ., concur.