ANASTASIA SANCHEZ, Plaintiff-Appellee and Cross-Appellant, *v.* BOCK LAUNDRY MACHINE COMPANY, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)    No. 80-2597

Opinion filed June 30, 1982.

Peterson, Ross, Schloerb & Seidel, of Chicago (Lawrence X. Pusateri and Robert S. Milnikel, of counsel), for appellant.

Richard J. Leamy, Jr., of Wiedner & McAuliffe, and William J. Harte, Ltd., both of Chicago, for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

Anastasia Sanchez, the plaintiff, brought this product liability action against Bock Laundry Machine Company (Bock), the defendant, to recover for injuries he suffered while operating a water extractor manufactured by the defendant. The plaintiff's two-count complaint alleged negligence and strict tort liability. The plaintiff withdrew the negligence count before trial but was allowed to reinstate that count at the close of his case. The defendant made a motion for a directed verdict on both counts at the close of all the evidence. The trial court granted the defendant a directed verdict on the strict liability count but submitted the negligence count to the jury. The trial court entered judgment in the amount of $50,000 on the jury verdict for the plaintiff on the negligence count.

At the post-trial hearing, the defendant moved for judgment notwithstanding the verdict on the negligence count,[1] and the plaintiff moved for a new trial on the issue of damages only. The trial court denied the motions, vacated the directed verdict ruling on the strict tort liability count, vacated the judgment entered on the jury verdict on the negligence count, and *sua sponte* ordered a new trial on all the issues. Leave to appeal was granted by this court pursuant to Supreme Court Rule 306 (73 Ill. 2d R. 306).

On appeal both parties argue that the order for a new trial on all the issues was improper and they contend that their post-trial motions should have been granted.

The plaintiff was injured in September 1974 while operating a water extractor at the Illinois Cleaners and Launderers in North Aurora, Illinois. A water extractor is used to pull water out of wet clothes that are placed in the extractor basket. The extractor spins at rates of speed of 1620 to 1710 revolutions per minute.

The plaintiff testified that he was 16 years old in 1974 and that he had

---

[1] The defendant also moved for a directed verdict on the negligence count stating that the trial court had never ruled on defendant's motion for a directed verdict at the close of the evidence. Although the trial court stated that it was "holding off" ruling on the motion for a directed verdict on the negligence count, the court impliedly denied the motion by sending that issue to the jury.

worked at the cleaners for three days. He began training on the use of the extractor on the morning of the day he was injured. That afternoon he had put a bundle of wet clothes into the machine, closed the lid and moved the handle to the "on" position. Subsequently, he pushed the handle of the machine to the "off" position; and seconds later, he lifted the lid with his right hand while resting his left hand on top of the machine. The plaintiff did not know whether the basket inside the extractor was spinning when he lifted the lid. He could not hear the rotation of the basket and could not see whether the machine was still spinning when the lid was closed. The plaintiff testified that after he lifted the lid, something grabbed his fingers, twisted them and pulled his left hand into the machine. As a result of his injuries, the plaintiff's left arm had to be amputated below the elbow.

John Clement, president of the defendant company, testified that the extractor that caused the plaintiff's injury was manufactured by Bock in May 1969. He stated that the extractor was a top-loading machine and was activated by throwing the control handle in a clockwise fashion to the "on" position. In this position the handle extends over the lid of the extractor, the brake is released, and the basket begins to spin. The brake is applied by moving the control handle to the "off" position in a counterclockwise fashion. Clement testified that, after the brake is applied, the basket will continue to coast to a halt. He stated that the operator should not have been able to open the lid of the extractor to remove the clothes until the basket stopped rotating. Clement also stated that the extractor operator could determine that the basket was still spinning after the control handle was put in the "off" position by feeling the continued vibration of the machine. He said that the operator could see that the basket was still spinning by looking through a small hole, about an inch and a half wide, located on the lid.

Clement further testified that when the extractor left the Bock plant, it contained a properly functioning interlock safety device to prevent the lid from being opened while the basket was spinning. He stated that every machine was tested as it came off the assembly line to make sure the safety device was functioning properly. Clement further stated that the interlock safety device was designed to last the lifetime of a properly maintained extractor and should not have broken down absent undue force applied against the lid. Clement testified that the extractor also had a warning plate that stated: "For your safety, do not force the lid. Do not attempt to load or unload if the basket is spinning." According to Clement, this warning was made for situations where attempts could be made to abuse the machine by exerting excessive force to open the lid of the machine while the basket is still spinning.

Clement testified that the extractor, with its interlocking safety device, was manufactured in compliance with industry standards for laundry machines. He stated that in 1969 it was not technologically feasible to create a warning light, buzzer or siren on the Bock extractor design to indicate that the basket was still in motion after the brake had been applied. Clement stated that additional electrical circuits would have been required and discussed the difficulty of developing a device that could sense the continued rotation of the basket. Clement admitted that a time release device could have been designed to keep the lid closed for a designated period after the brake had been applied but stated that the coasting time of the basket varied. In his opinion, the number of safety devices on a machine was not determinative of the safety of the machine as any of the devices could malfunction. Bock relied upon the interlock device as its safety feature and felt that that device was completely adequate to lock the extractor cover and to provide safety for the machine operator.

Jay Trexler, a consulting engineer, testified for the plaintiff. He stated that he examined the water extractor three days after the plaintiff was injured. The extractor appeared to be unaltered and in its original state. Trexler testified concerning the operation of that machine and stated that contrary to industry standards, the lid of the extractor could be raised 2½ inches while the control handle was positioned over it. He testified that when the control handle was moved to the "off" position, the cover could be lifted all the way up while the basket coasted to a stop. According to Trexler, the basket did not stop rotating until about 25 or 26 seconds after the extractor control handle was turned to the "off" position. Trexler did not observe any time release or other device that would keep the lid from opening after the control handle was placed in the "off" position and while the basket continued to rotate. He stated that it was technologically feasible in 1969 to have installed a red light or warning light on the extractor to alert the operator that the basket was spinning after the control handle was placed in the "off" position. Trexler stated that, in his opinion, the extractor was unreasonably dangerous because it was possible to immediately open the cover while the basket was rotating at or near its operating speed after the control handle was placed in the "off" position. He stated that a time locking device, warning light or buzzer would have made the machine safe and not unreasonably dangerous.

On cross-examination, Trexler stated that he did not know whether the extractor had an interlock device and did not know whether such a device had been employed in its original manufactured condition. He stated that industry standards required interlocking devices and admitted

that if the extractor contained such a device and if the device was functioning, the machine would have met the standard of safety that he felt was necessary.

In a product liability cause of action based on ordinary negligence, a plaintiff must show that a defendant owed him a duty of reasonable care and either failed to do something which a reasonably careful person would have done or did something which a reasonably careful person would not have done. (*Kossifos v. Louden Machinery Co.* (1974), 22 Ill. App. 3d 587, 317 N.E.2d 749.) The manufacturer of a product owes a duty to design the product so that it is reasonably safe for its intended use and for any reasonably foreseeable use (*Johnson v. Amerco, Inc.* (1980), 87 Ill. App. 3d 827, 409 N.E.2d 299; *Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382, 197 N.E.2d 849) and is liable in tort for the negligent design of a product that imposes an unreasonable risk of harm upon the user (see *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307).

A manufacturer is liable under the theory of strict tort liability if the plaintiff proves that his injuries resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.) A product is unreasonably dangerous where it fails to perform in the manner reasonably expected in light of its nature and intended function (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401), and where the defect in the product subjects those exposed to it to an unreasonable risk of harm. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) An unreasonably dangerous design defect can be demonstrated by evidence that the product fails to conform to accepted design standards or by evidence of the availability or feasibility of alternative designs (*Neal v. Whirl Air Flow Corp.* (1976), 43 Ill. App. 3d 266, 356 N.E.2d 1173; *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 274 N.E.2d 828). (*Ebbert v. Vulcan Iron Works, Inc.* (1980), 87 Ill. App. 3d 74, 409 N.E.2d 112.) The question of what is unreasonably dangerous is usually a jury question (*Nelson v. Hydraulic Press Manufacturing Co.* (1980), 84 Ill. App. 3d 41, 404 N.E.2d 1013), particularly where there is conflicting expert testimony. *Ebbert v. Vulcan Iron Works, Inc.*

In the case at bar, the plaintiff's complaint alleged that the defendant negligently manufactured a water extractor that permitted access to a rotating basket and in failing to warn that the basket continued to spin after the machine was turned off. The plaintiff also contended that this condition and the absence of adequate safeguards made the extractor unreasonably dangerous. It was the defendant's position that the water

extractor was not negligently designed nor unreasonably dangerous because it was manufactured with an interlock device that prevented access to the basket while it continued to rotate after the machine's power had been turned off. There also was a warning label affixed to the extractor at the time it left defendant's factory. The defendant contended that the evidence at trial did not prove the plaintiff's allegations and that it therefore was entitled to a directed verdict and judgment notwithstanding the verdict.

Motions for directed verdicts and judgments notwithstanding the verdicts should be granted only in those cases in which all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; see *Ebbert v. Vulcan Iron Works, Inc.*) In the instant case the trial court initially granted the defendant's motion for a directed verdict on the strict tort liability count of the plaintiff's complaint. We believe that ruling was correct since the plaintiff failed to prove that the water extractor was unreasonably dangerous and that the unreasonably dangerous condition existed at the time the extractor left the defendant's control.

■■ Witnesses presented by both parties testified that the interlock safety device described at trial met industry safety standards and that, if the device was functioning, the water extractor was not unreasonably dangerous. (*Cf. Flores v. U.S. Industries, Inc.* (1980), 81 Ill. App. 3d 944, 401 N.E.2d 979 (directed verdict proper where no testimony that product was unreasonably dangerous and where evidence showed that existent safety features performed same function as devices proposed by plaintiff).) Furthermore, while the plaintiff's witness testified that the interlock safety device was not present during his examination of the extractor, which was subsequent to the time that the plaintiff was injured, the plaintiff presented no proof as to the condition of the extractor at the time it left the manufacturer's control. The only evidence on that issue was presented when the president of the defendant company testified that all extractors were equipped with interlock devices and that all extractors were inspected and tested before they left Bock. Thus, all of the evidence, when viewed most favorably to the plaintiff, overwhelmingly favored the defendant so that no contrary verdict based on the evidence could ever stand. The trial court correctly granted the defendant's motion for a directed verdict on the strict liability count at the close of all of the evidence, and it erred in vacating this ruling and in ordering a new trial on that count at the hearing on the post-trial motions.

For similar reasons, we believe the trial court should have entered judgment notwithstanding the verdict in favor of the defendant on the negligence count. The plaintiff's negligence count was premised on

allegations that the extractor was carelessly and negligently manufactured so that the operator would have access to the basket before it stopped rotating and that the manufacturer negligently failed to warn that the machine continued to spin after the control handle was placed in the "off" position. The plaintiff also contended at trial that the machine should have been equipped with other safety or warning devices such as a warning light, buzzer or timing device.

■■ The evidence at trial, however, showed that the extractor was manufactured with an industry-required safety interlock device and was equipped with a plate warning against the loading or unloading of the basket while it continued to rotate. While the plaintiff's expert suggested alternative safety and warning devices, he conceded that the extractor, when equipped with a functioning safety interlock device, would not have allowed access to the rotating basket. Thus, the plaintiff's premise for the defendant's alleged negligence, allowing access to the rotating basket, was disproved. Since the plaintiff failed to prove that the defendant imposed an unreasonable risk of harm to the operator of the extractor or that the defendant made the extractor unreasonably unsafe for its intended and foreseeable use, the plaintiff was not entitled to a verdict on the negligence count. Therefore, the court should have granted the defendant's motion for judgment notwithstanding the verdict; and the court erred in granting a new trial on the negligence count.

The final issue raised in this appeal concerns the sufficiency of the jury award. In view of our holdings that the plaintiff was not entitled to recover based on the liability theories he had presented, there is no need to rule on the issue of damages.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and judgment is entered for the defendant on both counts.

Reversed.

WHITE, P. J., and RIZZI, J., concur.