ROBERT AMARAL, Plaintiff-Appellant, v. WOODFIELD FORD SALES, INC., Defendant-Appellee.

First District (1st Division)   No. 1—89—2949

Opinion filed August 12, 1991.—Rehearing denied November 14, 1991.

Pochis & Katz, of Chicago (Alan D. Katz, of counsel), for appellant.

Judge & Knight, Ltd., of Park Ridge (Elizabeth A. Knight and Vickie Voukidis Blum, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Robert Amaral, appeals from an order denying his motion for leave to file a supplemental counteraffidavit in response to the summary judgment motion filed by defendant, Woodfield Ford Sales, Inc. (Woodfield), and from an order granting summary judgment in favor of Woodfield. On appeal, plaintiff contends that: (1) the trial court erred in denying his motion for leave to file a counteraffidavit in response to Woodfield's motion for summary judgment; and (2) Woodfield breached its duty of reasonable care to plaintiff, a business invitee. For the following reasons, the judgment of the trial court is affirmed.

The record sets forth the following facts relevant to this appeal. Plaintiff was employed by D&N Oil to apply rustproofing to vehicles at various automobile dealerships and to supervise on-the-job training of other D&N Oil employees in the techniques of rustproofing. On August 22, 1984, plaintiff, in his capacity as independent contractor, was supervising on-the-job rustproofing training at Woodfield. Plaintiff was working in a service bay which was part of a large, enclosed service area where mechanics performed various services on automobiles brought to Woodfield. The service bay in which plaintiff worked was located directly across from the wash bay, where automobiles were washed and radiators were flushed. The concrete floor in the service area sloped toward a center floor drain, through which the run-off of any fluids used in the bays would drain. In spite of the drain, a thin film of fluid was generally on the floor, causing it to be slippery. Plaintiff was aware of the conditions of the service area. On the day of his accident, plaintiff was walking across the damp service-area floor from his bay to the emissions testing bay when he slipped on the floor, fell, and was injured.

As a result of his injuries, plaintiff filed a complaint against Woodfield, alleging that it had caused the floor to become and to remain in a dangerous and hazardous condition, and seeking damages. At his deposition, plaintiff stated that on the morning of the accident, the

service-area floor probably became slippery after the first car was washed. Cars were in and out of the wash bay all that morning. Plaintiff further stated that he had not seen anyone flushing out a radiator until right before he fell. Because radiator fluid is exceptionally slippery, anyone who performed a radiator flush was supposed to wet down the area and then use a "squeegee" to clean up the fluid. Some mechanics would even use soap and water to clean up after a radiator flushing.

Plaintiff admitted in his deposition that he knew there had been a radiator flush that morning and that he knew that radiator fluid was slippery. Plaintiff also stated that he had walked across the area in which he had fallen several times earlier that day without any problem. He wore nonskid shoes and walked cautiously because it could not be discerned visually whether the liquid on the floor was water or a mixture of water and radiator fluid. The only way to be sure was to touch it or to smell it. After plaintiff fell, he smelled and touched the liquid on the floor and recognized it as radiator fluid.

Predicated on plaintiff's deposition, Woodfield moved for summary judgment on the ground that, as a matter of law, Woodfield had no duty to plaintiff, a business invitee, to warn him or to protect him from dangers which are known to him or which are so obvious and apparent that he may be reasonably expected to discover them. On August 9, 1989, after the trial court heard arguments on the summary judgment motion, it set Tuesday, October 10, for a ruling. On Friday, October 6, the last business day before the ruling was to be entered, plaintiff moved for leave to file additional authority in support of his position and to file his own counteraffidavit, which allegedly contained facts not covered by the deposition. The trial court granted plaintiff leave to file additional authority, but denied him leave to file the counteraffidavit.

On October 10, 1989, the date scheduled for the ruling, the trial court entered summary judgment in favor of Woodfield. Plaintiff appeals from the orders dated October 6, 1989, and October 10, 1989.

First, plaintiff argues that, pursuant to section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)), he had a right to file his counteraffidavit because the hearing had not yet concluded. Section 2—1005(c) provides, in relevant part:

> "The opposite party may prior to or at the time of the hearing on the motion file counteraffidavits."

Woodfield argues that plaintiff did not move for leave to file his counteraffidavit until after the hearing. Therefore, it was within the trial court's discretion to deny the motion.

The record presents the following chronology of events leading up to the trial court's October 10, 1989, order granting summary judgment. Woodfield filed its motion for summary judgment on March 8, 1989. On March 21, 1989, the motion was continued for a status hearing on May 12, 1989. On that date, a hearing was set for August 9, 1989. At the hearing, both parties disagreed as to whether plaintiff had stated in his deposition that he had actually seen radiator fluid on the service-area floor prior to the accident. The court noted that because the parties had only attached excerpts from the deposition to their pleadings, she would have to read the entire deposition to clarify the facts before making her determination. As a result, an order was entered on the trial court's own motion to continue the hearing to October 10 for a ruling. The order provided, in pertinent part:

"[T]hat Defendant's motion for Summary Judgment is taken under advisement. Said motion is continued for a ruling on October 10, 1989 at 2:00 p.m. Defendant to supply court with courtesy copy of plaintiff's deposition transcript."

The plain language of section 2—1005(c) allows an opposing party to file a counteraffidavit prior to or at the time of the hearing. The pivotal question raised by the facts at bar is the meaning of the phrase "at the hearing." Plaintiff contends that until a ruling is entered, the hearing has not concluded. Woodfield, however, contends that the hearing concluded on August 9, 1989, when the parties completed their arguments.

It is well-established that a statutory term which is not defined by the statute must be given its ordinary and popularly understood meaning. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 519 N.E.2d 459.) In a legal context, "hearing" is defined as a "[p]roceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have right to be heard, and is much the same as a trial and may terminate in final order." (Black's Law Dictionary 649 (5th ed. 1979).) Thus, by definition, a hearing may conclude without a ruling. The hearing consists of the actual arguments of the parties, and the ruling may follow immediately or be reserved for a future date. In the present case, the record indicates that the hearing on the summary judgment motion concluded on August 9, 1989. The trial court then continued the motion solely for a ruling. In ordering the continuance, the court stated, "I trust you have finished your argument." Neither counsel indicated otherwise. The court then stated, "And I will give a date to come in for a ruling on this."

Thereafter, on October 10, the date set for the ruling, the following colloquy ensued:

"[COUNSEL FOR WOODFIELD]: This was previously argued.

THE COURT: It is here for a ruling.

[COUNSEL FOR WOODFIELD]: Correct, Judge."

Thus, it was clear to the parties that the argument had been completed on August 9, 1989, and only the ruling remained to be announced. Accordingly, because plaintiff had failed to file his counter-affidavit at the hearing, it was within the trial court's discretion to deny plaintiff's motion to file the counteraffidavit on the last business day before the court's ruling. *Hall v. DeFalco* (1988), 178 Ill. App. 3d 408, 533 N.E.2d 448.

■ Where the plaintiff was given ample opportunity to prepare and to present counteraffidavits to defendant's motion, the court's refusal to allow the filing of counteraffidavits does not constitute an abuse of discretion. (*Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 525 N.E.2d 1127.) In the present case, plaintiff was deposed on December 18, 1986; predicated on the deposition, Woodfield filed its motion for summary judgment on March 8, 1989; plaintiff then filed his response to the motion on April 18, 1989; and a status hearing was set for May 12, 1989, at which time the hearing was scheduled for August 9, 1989. As indicated, plaintiff had five months within which to file a counteraffidavit before or at the time of the hearing. In our view, plaintiff had ample time within which to prepare and to present his counteraffidavit. Based on these circumstances, it does not appear that the trial court abused its discretion in denying plaintiff's motion for leave to file his counteraffidavit.

Finally, plaintiff's reliance on *Lombard v. Elmore* (1985), 134 Ill. App. 3d 898, 480 N.E.2d 1329, *aff'd in part & rev'd in part* (1986), 112 Ill. 2d 467, 493 N.E.2d 1063, is unpersuasive in that the *Lombard* court never addressed the timeliness of the filing of defendant's affidavit. Instead, it found that the trial court had erred in denying defendant's request to file his affidavit on the ground that defendant had failed to notify plaintiff of his intent to file the motion.

Next, plaintiff contends that Woodfield breached its duty to exercise reasonable care in the performance of radiator flushes so as to protect business invitees, such as plaintiff, from the dangers of radiator fluid on the service-area floor. In response, Woodfield argues that the slippery condition was an open and obvious danger which obviated any duty it might have had to plaintiff as a business invitee.

■■ ■ It is undisputed that plaintiff's status on Woodfield's property was that of a business invitee. A person is a business invitee on the premises of another if: (1) he enters by express or implied invitation; (2) his entry is connected with the possessor's business or with an activity the possessor conducts or permits to be conducted on his premises; and (3) there is a mutuality of benefit or an advantage to the possessor. (*Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709.) Illinois has adopted the rules set forth in sections 343 and 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts §§343, 343(A), at 215-16, 218 (1965)) regarding the duty of possessors of land to their invitees. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) Section 343 provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts, §343, at 215-16 (1965).

Section 343A provides the following exception to section 343:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts §343A, at 218 (1965).)

"Known" means "not only the knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." (Restatement (Second) of Torts §343A, Comment *b*, at 219 (1965).) "Obvious" denotes that "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts §343A, Comment *b*, at 219 (1965).

Comment *f* of the Reporters' Notes to section 343A further explains the duty of the possessor of the land:

"There are *** cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.

In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *** In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. *** It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts §343A, Comment *f*, at 220 (1965).

Recently, in *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239, the supreme court addressed the issue of the duty of a possessor of land to a business invitee. In *Deibert*, plaintiff, an electrician employed by Fritz Electric Co., as subcontractor, was injured while working at a jobsite supervised by defendant. While at the construction site, plaintiff used a portable bathroom located between two multistory buildings under construction. It had rained the day before and the ground was slippery. Because it was common practice for construction materials to be thrown off a nearby balcony into the area around the portable bathroom, plaintiff looked up toward the balcony while he was exiting the bathroom. As plaintiff was looking up, he stepped into one of several tire ruts, stumbled, fell and injured his back. Plaintiff filed a negligence suit against defendant. In defense of the suit, defendant argued that the rut was obvious and that plaintiff had been inattentive, not distracted, at the time he exited the bathroom. The trial court held that defendant owed plaintiff a duty of care. The appellate court and supreme court affirmed.

In reaching its decision, the supreme court stated that although the rut into which plaintiff had stumbled was obvious, as defined by comment *b* to section 343A, plaintiff had been distracted by the need to look for fallen debris when he was exiting the bathroom. Recognizing that defendant had known of the existence of the ruts and the location of the bathroom, the supreme court found that defendant could have reasonably anticipated that a construction worker exiting the bathroom would be momentarily distracted by the fear of possible falling debris from the

balcony overhead and stumble into a rut he might have otherwise noticed. The court further found that although the ruts did not present an unreasonably dangerous condition in themselves, when coupled with the threat of falling construction materials, they presented an unreasonable danger. For those reasons, the court ruled that defendant should have reasonably anticipated the distraction and foreseen the injury to plaintiff.

The facts in the present case are distinguishable from those in *Deibert* on the pivotal point of plaintiff's distraction. In his deposition, plaintiff stated that, at the time he fell, he was looking down at the service-area floor and walking cautiously because the floor was wet. Further, plaintiff stated that he had been working at Woodfield for two years, was familiar with the potential danger of radiator fluid on the floor and knew that a radiator flushing had just been done. These admissions indicate that he was not only aware of the potential danger, but that he had not been distracted from that awareness.

The situation at bar is similar to that addressed in *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 423 N.E.2d 942. In *Sepesy*, plaintiff's deceased, a truck driver, was killed while standing on an inclined ramp between his truck and the truck in front of him, waiting to unload grain at defendant's grain dump. When the driver of the truck in front of him engaged the truck's gears to move forward, the truck rolled back and crushed the deceased. Plaintiff, as administrator of deceased's estate, filed suit against defendant, owner of the ramp. Following a jury trial, defendant was found to have been negligent.

Relying on the Restatement (Second) of Torts, sections 343 and 343A, the reviewing court reversed the trial court's judgment. In reaching its decision, the court found that the incline in the ramp was apparent and obvious, that truck drivers were aware of the propensity for trucks to roll backward, and that there was no evidence that the deceased had been distracted. Accordingly, the reviewing court held that defendant had no duty to warn the deceased of the danger of the incline or to provide safety devices for his protection.

Similarly, in the case at bar, plaintiff was aware of the wet floor in the service area; he knew that a radiator had just been flushed, and he knew that radiator fluid was very slippery. As previously stated, the evidence as to plaintiff's cautious manner of walking clearly shows that he had not forgotten these facts and was not distracted by other factors. Plaintiff claims that he did not know whether the liquid on the floor was water or water and radiator fluid, the latter combination being more slippery. However, plaintiff also indicated that he could have made a def-

inite determination as to the fluid's contents by either touching it or smelling it. However, he did neither before walking on it.

■ Accordingly, because plaintiff entered defendant's property to conduct an activity in surroundings plaintiff knew presented the potential danger of falling, and there was no evidence that he was distracted or that he had momentarily forgotten about the danger, the determination of whether the slippery floor was a known and obvious danger was properly a question of law to be decided on a summary judgment motion. Further, because the possessor of land has no obligation to protect the invitee from open and obvious dangers which are known to him (*Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709), the trial court properly ruled as a matter of law that Woodfield owed no duty to plaintiff and granted summary judgment in favor of Woodfield.

The situation at bar is distinguishable from that in *Steinhauer v. Arnie Bauer Cadillac Co.* (1988), 172 Ill. App. 3d 314, 526 N.E.2d 577, relied upon by plaintiff. In *Steinhauer,* plaintiff, a patron at defendant's dealership, was directed to seat herself in a chair which was located near a half-wall in the sales office. In doing so, she struck her head on a ledge which protruded from the wall. As a result of the injury, plaintiff filed a negligence action against defendant. Defendant moved for summary judgment on the grounds that the chair and surrounding structures were clearly visible and obvious, negating any duty to plaintiff.

On appeal, the reviewing court distinguished the situation where a plaintiff entered a defendant's property to conduct an activity which puts plaintiff on notice of potential danger from a situation where the plaintiff was merely performing a common act at defendant's request, such as sitting down in a chair. The court held that in the latter situation, whether the object causing the injury was open and obvious was a question of fact, not properly decided on a summary judgment motion. By contrast, in the former situation, the issue is properly decided as a matter of law. The facts in the present case are analogous to the former situation.

Based on the aforementioned, the judgment of the trial court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.