965 F.2d 1421
 Prod.Liab.Rep. (CCH) P 13,200
Clarence W. MASON, Plaintiff-Appellant,
v.
ASHLAND EXPLORATION, INCORPORATED, a corporation, Ashland
Oil, Incorporated, a corporation, and National
Supply Company, a Division of Armco
Steel Corporation, a
corporation,
Defendants-
Appellees.
 No. 91-1274.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1991.
Decided June 2, 1992.
Rehearing Denied July 1, 1992.
 
 Joseph Phebus (argued), Nancy J. Glidden, Phebus, Tummelson, Bryan & Knox, Urbana, Ill., James H. Cooksey, Crain, Cooksey, Veltman & Miller, Centralia, Ill., Brad L. Badgley, C.E. Heiligenstein, Heiligenstein & Badgley, Belleville, Ill., for Clarence W. Mason.
 James W. Erwin, Thompson & Mitchell, Belleville, Ill., Raymond L. Massey, Thompson & Mitchell, St. Louis, Mo., for Ashland Exploration, Inc. and Ashland Oil, Inc.
 John L. McMullin (argued), Beth K. Veath, Brown & James, St. Louis, Mo., for National Supply Co.
 Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 Plaintiff Clarence Mason, a painter, was seriously injured when he caught his hand in the rotating counterweights of an oil pump. In 1986, he filed a diversity action in the Southern District of Illinois against the pump's owners, Ashland Oil, Inc. and Ashland Exploration, Inc. (collectively referred to as "Ashland"), and the pump's manufacturer, National Supply Company ("National"). In 1991, the district court granted summary judgment in favor of Ashland and National, concluding that, under Illinois law, they had no duty to warn or to protect Mr. Mason from the obvious dangers of the counterweights. Mr. Mason appeals these decisions, and, for the following reasons, we affirm.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 This case arises from an accident at Ashland's "Flora North Unit 3" oil production facility, near Flora, Illinois. In 1984, Ashland was in the process of refurbishing the Flora unit. As part of its overhaul, it converted the pump from gas to electric power and also brought in a contractor to clean and paint the pump. On September 21, 1984, Mr. Mason and his colleague Virgil Halterman were sent by their employer Carl Paul to paint the Flora pump, which had previously been cleaned. Mr. Mason was an experienced painter who had painted oil pumps in the past. Before beginning work on the unit, Mr. Mason and Mr. Halterman shut down the electric engine that was powering the pump and braked, or locked, the counterweights. Mr. Mason testified that he did this as a safety precaution because he knew that rotating counterweights were dangerous. R.122, Mason Dep. at 147.
 
 
 4
 Mr. Mason and Mr. Halterman finished the painting job, and Halterman restarted the pump. During the course of cleaning up and stowing equipment, Mason stood next to the operating pump and attempted to straighten out a painting hose. In his deposition, Mr. Mason admitted that, when he was dealing with the hose, he was aware that the pump was on and that the counterweights were moving. R.122, Mason Dep. at 112. What happened next is uncertain, but Mr. Mason somehow fell into the pump and one of the counterweights severed his right hand. Complications later required amputation of his right arm.
 
 
 5
 For the purpose of determining whether summary judgment was appropriate, some additional facts are relevant. First, it is apparent from the record that the counterweights that injured Mr. Mason were conspicuous, and that the danger that they posed was obvious. Second, guards were available that could have shielded the counterweights, and presumably would have prevented Mr. Mason's injury. Third, at the time of the accident, these guards were not on the pump, although Ashland was planning to add them as part of its refurbishment of the unit. It is unclear from the record whether National supplied counterweight guards when it manufactured the pump in the 1940s. Finally, in his brief, Mr. Mason states that the configuration of the counterweight guards
 
 
 6
 is based in part on the configuration of the pump and the configuration of the engine. Accordingly, the counterweight guards that would be used for a pump with a gas motor would be different from the configuration that would be used if the motor was changed to an electric motor.
 
 
 7
 Appellant's Br. at 10-11. As a result, "with the new electric motor, the counterweight guards would be a different configuration than the guards that would have been used with the prior engine had the pump previously been equipped with guards." Id. at 11. The witness Mr. Mason cites for this proposition, an Ashland employee named Lester Murphy, testified in his deposition that the guards on an electric pump "would have been a different size" than the guards on a gas pump. R.124, Murphy Dep. at 51.
 
 B. District Court Proceedings
 
 8
 After discovery, both Ashland and National moved for summary judgment. In a pair of opinions, the district court analyzed the duties of both defendants under Illinois law. With regard to Ashland, the court first found that sections 343[1] and 343A[2] of the Restatement (Second) of Torts, which state a possessor of land's duties to an invitee, governed Ashland's conduct. The court then reasoned that Ashland had no liability under section 343(b) because it logically could expect that Mr. Mason, a professional painter who was experienced in painting oil wells, would appreciate the dangers of the counterweights and protect himself from them. "To find that Ashland should expect that Mason would not realize the danger inherent in painting a pump, or would fail to protect himself against that danger, the Court would have to conclude that Mason did not realize the nature of [the] activity he undertook to perform." Mason v. Ashland Exploration, Inc., No. 86-C-3453, mem. op. at 5 (S.D.Ill. Sept. 29, 1989). The court further concluded that section 343A(1) would place liability on Ashland for the obvious danger of the counterweights only if it was foreseeable that Mr. Mason would work next to an operating pump. It then determined that
 
 
 9
 [t]he "objectively reasonable" range of injuries that Ashland should have foreseen would not include those which would result from Mason being near enough to the pump to be struck when it was started. Mason's accident was a tragedy; but it was not one which Ashland should have foreseen, and not one for which § 343A(1) imposes liability.
 
 
 10
 Id. at 7-8.
 
 
 11
 In reaching this decision, the court distinguished several cases applying Illinois law which have imposed liability under section 343A for injuries from an obvious danger, when it was foreseeable that the plaintiff would be distracted from the danger, or would proceed despite it.[3] See Mason, mem. op. at 5-12 (S.D.Ill. Sept. 29, 1989); Mason, mem. op. at 2-5 (S.D.Ill. Jan. 7, 1991). The court found that there was no indication in the record that anything existed at the job site that would have distracted Mr. Mason from the pump. However, even if Mason had failed to protect himself from the counterweights, "Ashland could not be charged with the duty to have foreseen such an occurrence. To suggest that Mason might forget or be distracted from the danger on which his attention was focused ... is to conclude that Mason was uninformed about aspects of the job he was to perform." Mason, mem. op. at 11 (S.D.Ill. Sept. 29, 1989). The court also held that Mason's injury did not arise because he was compelled to face the danger in order to keep working. Instead, Mason was a contractor who entered Ashland's property for the express purpose of working on the dangerous oil pump, and, therefore, Ashland "should have the liberty to anticipate that the invitee will not fail to protect himself from the danger." Id. at 9-10.
 
 
 12
 The court then addressed whether National, the manufacturer of the pump, had any liability for not warning Mr. Mason or protecting him from the pump. As in the case of Ashland, the court began its analysis by remarking that the danger presented by the counterweights was obvious. It then noted that there was no allegation in the case that the pump was more dangerous than would be normally expected, given the nature of the product. Consequently, the court held that, as a matter of law, National owed no duty of care to Mason. Mem. op. at 16-17 (S.D.Ill. Sept. 29, 1989). Alternatively, the court found that Mason's employer, Carl Paul, was aware of the dangers that the pump posed to his employees. Any failure to warn Mason of the danger therefore was the fault of Paul, and not of National. Finally, the court found that Mason actually knew of the pump's hazards. Therefore, National was not liable, because a manufacturer has no duty of care when a product "functions properly for the purposes for which it was designed, was without defect, and created no danger or peril not known to the user." Id. at 19.
 
 II
 ANALYSIS
 A. Standard of Review
 
 13
 Mason appeals the grant of summary judgment in favor of both Ashland and National. We review de novo a district court's decision to grant summary judgment. La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 905 (7th Cir.1990). Summary judgment is appropriate only if no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law. Id. In this diversity case, because both parties agree that the substantive law of Illinois governs, we shall apply that state's law. Wood v. Mid-Valley Inc., 942 F.2d 425, 426-27 (7th Cir.1991). " 'The decision of a federal court in a ... case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it.' " Midwest Knitting Mills, Inc. v. United States, 950 F.2d 1295, 1298 (7th Cir.1991) (quoting Konradi v. United States, 919 F.2d 1207, 1213 (7th Cir.1990)); see also Brooks v. Chicago Downs Ass'n, 791 F.2d 512, 514 (7th Cir.1986) ("Because the Illinois Supreme Court has never directly confronted the issue ... we must take what they have said, what Illinois appellate courts have said, and then the decisions of other states on the same issue, in order to formulate our holding."). We make this determination of state law de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991).
 
 B. Liability of Ashland
 1.
 
 14
 Before determining whether Ashland was entitled to summary judgment, we must first establish what issues are properly before this court. In his brief, Mr. Mason argues three separate theories why Ashland is liable for his injury. First, he contends that Ashland became a remanufacturer of the pump when it placed an electric motor on it. Consequently, it owed him the duties of a manufacturer and was negligent for not equipping the pump with guards, or for not warning him of its dangers. Second, Mason contends that the pump was situated in a work site which Ashland operated. He argues, therefore, that he had a right of action based on the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651, et seq., and Labor Department regulations, for Ashland's failure to make the pump site safe. Finally, Mr. Mason reargues the claim that the district court decided--that, as a possessor of land, Ashland owed a duty to him to fit the pump with guards or to warn him of the pump's hazards.
 
 
 15
 Of these three arguments, Mr. Mason raised only the last one, the possessor of land claim, when he responded to Ashland's motion for summary judgment. R.124; R.162. The remanufacturer claim and the OSHA claim are argued for the first time in this appeal.[4] "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." Liberles v. County of Cook, 709 F.2d 1122, 1125-26 (7th Cir.1983).[5] Consequently, these two issues were not adequately presented and may be considered waived. However, although Ashland did raise Mr. Mason's waiver of the remanufacturer claim in its appellate brief, it did not raise his waiver of the OSHA issue. Therefore, Ashland has waived the right to rely on waiver of the OSHA claim. McKnight v. General Motors Corp., 908 F.2d 104, 108 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).
 
 2.
 
 16
 Mr. Mason's reliance on OSHA and its regulations warrants little discussion. In Merritt v. Bethlehem Steel Corporation, 875 F.2d 603, 608 (7th Cir.1989), this court held that an employee of a contractor has no private right of action based on OSHA against the operator of a workplace who violates that statute. Merritt, therefore, precludes Mr. Mason's OSHA claim. See also 29 U.S.C. § 653(b)(4); Jeter v. St. Regis Paper Co., 507 F.2d 973, 976-77 (5th Cir.1975).[6]
 
 3.
 
 17
 We agree with the district court that, as a possessor of land, Ashland was not liable for Mr. Mason's injuries. For a defendant to be liable for negligence, a plaintiff must establish that the defendant had a duty toward the plaintiff, that he breached that duty, and that the breach was a proximate cause of the plaintiff's injury. Gouge v. Central Illinois Public Service Co., 144 Ill.2d 535, 163 Ill.Dec. 842, 845, 582 N.E.2d 108, 111 (1991). In two recent opinions, Deibert v. Bauer Bros. Construction Co., Inc., 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990), and Ward v. K Mart Corp., 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990), the Illinois Supreme Court has clarified the duty of care an owner or occupier owes for obvious dangers on land. In these cases, the court adopted the standards of sections 343 and 343A of the Restatement (Second) of Torts. It held that as a general rule "the owner or occupier may reasonably assume that invitees will exercise reasonable care for their own safety, and that ordinarily he need not take precautions against dangers which are known to the visitor or so obvious that the visitor may be expected to discover them." Ward, 143 Ill.Dec. at 296, 554 N.E.2d at 231. The court, however, recognized that the mere fact that a danger is obvious does not, by itself, shield a possessor from liability. Instead, a duty of care exists to protect invitees from an obvious danger " 'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.' " Id. (quoting Restatement (Second) of Torts § 343A, comment f). Whether or not this duty of care exists is a question of law for the court. Deibert, 152 Ill.Dec. at 556, 566 N.E.2d at 243. The relevant inquiry is " 'whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, ... or forgetful of the condition after having momentarily encountered it.' " Id. 152 Ill.Dec. at 556-57, 566 N.E.2d at 243-44 (quoting Ward, 143 Ill.Dec. at 297, 554 N.E.2d at 232).
 
 
 18
 Thus, in Ward, the court found that a store owner could reasonably foresee that customers would have their vision blocked by packages and thus would ignore the obvious danger created by a post near the store's entrance. Consequently, the store owner owed a duty to warn of or remove the post's hazards. Ward, 143 Ill.Dec. at 297-98, 554 N.E.2d at 232-33. Likewise, in Deibert, the operator of a construction site owed a duty of care to a worker when it could anticipate that the worker would become distracted by falling debris, and thus would not notice the danger posed by ruts in the ground. 152 Ill.Dec. at 556-57, 566 N.E.2d at 243-44; see also Jakubiec v. Cities Service Co., 844 F.2d 470, 472 (7th Cir.1988) (applying Illinois law) (operator of oil refinery owed duty of care to truck driver because it could foresee that he would act in spite of an obvious danger when "his only other choice was to forego his assigned duties").
 
 
 19
 Later cases, in which the Illinois Appellate Court found no liability for obvious dangers, delineate the limits of the rule in Ward and Deibert. In Moore v. Kickapoo Fire Protection District, 210 Ill.App.3d 736, 155 Ill.Dec. 214, 569 N.E.2d 214 (1991), the court noted that nothing was suggested in the record that could have distracted the plaintiff as she tripped over a stack of folding chairs. Therefore, the court found that the injury was unforeseeable, and that the landowner owed the plaintiff no duty of care. Id. 155 Ill.Dec. at 216, 569 N.E.2d at 216. The plaintiff in Amaral v. Woodfield Ford Sales, Inc., 220 Ill.App.3d 357, 163 Ill.Dec. 68, 73, 581 N.E.2d 19, 24 (1991), an employee of an independent contractor, was familiar with the dangers of a slippery floor in a repair garage, and was accordingly taking extra care, when he slipped and injured himself. "[B]ecause plaintiff entered defendant's property to conduct an activity in surroundings plaintiff knew presented the potential danger of falling, and there was no evidence that he was distracted or that he had momentarily forgotten about the danger," the defendant had no duty to protect him. Id. 163 Ill.Dec. at 74, 581 N.E.2d at 25. In Stevens v. Riley, 219 Ill.App.3d 823, 162 Ill.Dec. 534, 541, 580 N.E.2d 160, 167 (1991), the owners of property with a creek on it were not liable to a small child, who almost drowned, because they could not anticipate that the child's parents would allow her to play unsupervised near the water's edge.
 
 
 20
 Because the danger of the pump was obvious, Ward and Deibert would put a duty of care on Ashland only if it could reasonably foresee that Mr. Mason would be distracted from the danger, or that he would otherwise not take steps to protect himself. Ward, 143 Ill.Dec. at 296, 554 N.E.2d at 231; Deibert, 152 Ill.Dec. at 556-57, 566 N.E.2d at 243-44. However, Mr. Mason admitted in his deposition that he was aware that the pump was moving when he stood next to it, and there is no evidence that anything distracted him from the pump at the time of the accident. However, even if Mr. Mason had been distracted, Ashland could not reasonably anticipate this would happen. Here, Mason, an experienced painter, was employed specifically to work on the oil pump. He testified that he knew the dangers of the pump, and also that he knew how to brake the counterweights in order to make it safe. Indeed, he and his co-worker had shut it down for the principal part of their work. In this situation, Ashland could reasonably anticipate that Mr. Mason would be circumspect and would take measures to protect himself. Consequently, Ashland owed Mr. Mason no duty of care, and it has no liability for his injuries. Ward, 143 Ill.Dec. at 296, 554 N.E.2d at 231.
 
 C. Liability of National
 
 21
 Mr. Mason also challenges the district court's finding of no liability on the part of National for not providing the pump with counterweight guards or for not warning of its dangerous condition. It should be noted that, although these claims are brought against a manufacturer, Mr. Mason seeks recovery solely on a negligence theory, and does not attempt to hold National strictly liable for his injuries.[7] R.76. As in the case of Ashland, he will be able to recover against National only if he establishes that National owed a duty to him, that it breached that duty, and that that breach proximately caused his injuries. Whetstine v. Gates Rubber Co., 895 F.2d 388, 393 (7th Cir.1990) (applying Illinois law).
 
 
 22
 Mr. Mason first claims that National was negligent for not supplying the pump with counterweight guards. However, from our review of the record and case law, we believe that this claim must fail because Mason can establish neither a duty by National, nor any causal relation between National's failure to guard and his injuries. First, with regard to causation, Mason points out that, shortly before his accident occurred, Ashland changed the power source of the pump from a gas engine to an electric engine. Mr. Mason also states that this change of engine would have required altering the configuration of any counterweight guards on the pump. Lester Murphy, an Ashland employee, testified at his deposition that an electric pump would need differently sized guards than would a gas-powered pump. However, if National had supplied guards for the pump in the 1940s, when it manufactured it, presumably those guards would have been suited to a nonelectric engine. Under Mason's reasoning, these guards would no longer have been the proper size, or would have been otherwise unfit, when the machine was changed to electric power. Therefore, even if National had failed to supply guards to the pump, such a failure appears not to have been a cause of the injury. Any guards National would have provided would have been unsuited to the machine once it had been changed to electric power.
 
 
 23
 In addition, we believe that Illinois negligence law would place no duty on National to provide guards for the oil pump. Under Illinois law, all manufacturers have a nondelegable duty to produce a product that is reasonably safe. Phillips v. United States Waco Corp., 163 Ill.App.3d 410, 114 Ill.Dec. 515, 519, 516 N.E.2d 670, 674 (1987). In a products liability action based on ordinary negligence, "[t]he manufacturer of a product owes a duty to design the product so that it is reasonably safe for its intended use and for any reasonably foreseeable use ... and is liable in tort for the negligent design of a product that imposes an unreasonable risk of harm upon the user." Sanchez v. Bock Laundry Machine Co., 107 Ill.App.3d 1024, 63 Ill.Dec. 638, 641, 438 N.E.2d 569, 572 (1982); see also Cornstubble v. Ford Motor Co., 178 Ill.App.3d 20, 127 Ill.Dec. 55, 57, 532 N.E.2d 884, 886 (1988) (in order to recover on a design negligence theory, the plaintiff must establish that "the product is defective or not reasonably safe," and that "the defendant breached a duty owed to plaintiff"); Kokoyachuk v. Aeroquip Corp., 172 Ill.App.3d 432, 122 Ill.Dec. 348, 350, 526 N.E.2d 607, 609 (1988) ("For a plaintiff to prevail under a theory of design negligence, he must show that the quality of a particular product is insufficient and that the duty of care on the part of the manufacturer required it to design something safer for the user."). However, a manufacturer satisfies this duty of care when it "has endeavored to construct a product to function properly for the purpose for which it is designed and its operation creates no danger that is not known to the user." Flaugher v. Sears, Roebuck & Co., 61 Ill.App.3d 671, 18 Ill.Dec. 873, 876, 378 N.E.2d 337, 340 (1978). Consequently, in Flaugher, the producer of a properly functioning table saw was not negligent for failing to place a certain type of guard on the machine, when the danger posed by the saw was obvious. Id. In Miller v. Dvornik, 149 Ill.App.3d 883, 103 Ill.Dec. 139, 145, 501 N.E.2d 160, 166 (1986), a motorcycle manufacturer was found not to have breached its duty of care by not providing "crash bars," when there was no allegation that the machine had malfunctioned, and the dangers of riding a motorcycle were obvious. See also Bossert v. Tate, 183 Ill.App.3d 868, 132 Ill.Dec. 166, 539 N.E.2d 729 (1988). In Kokoyachuk, 122 Ill.Dec. at 351, 526 N.E.2d at 610, the manufacturer of a refrigeration truck was not liable for failing to provide guards against ice buildup, when there was no allegation that the truck was not operating properly at the time of the accident, and ice formation was an inherent property of the unit.[8]
 
 
 24
 In this case, Mr. Mason does not contend that National's pump in any way malfunctioned at the time of his accident. Apparently, it operated normally when the mishap occurred. Also, as noted above, the dangers posed by the unguarded counterweights were obvious, and, indeed, Mr. Mason admits that he knew of their hazards. His argument is essentially that National should have guarded against the known and patent danger of the counterweights.[9] However, the holdings in Flaugher, Miller, and Kokoyachuk suggest that the Illinois Supreme Court would find that National had no such duty and that, even without counterweight guards, the pump was "reasonably safe for its intended use and for any reasonably foreseeable use." Sanchez, 63 Ill.Dec. at 641, 438 N.E.2d at 572. Without a duty of care, National could not be negligent as a matter of law.
 
 
 25
 We also believe that National was entitled to summary judgment on the claim that it negligently failed to warn Mr. Mason of the dangers of the pump.
 
 
 26
 The purpose of a warning is to apprise persons coming into contact with a product of dangers of which they are unaware so that they may take appropriate precautions to protect themselves.... Therefore, ... where the risk is open and obvious, there is no duty to warn. However, if a product has dangerous propensities, the general rule is that a duty to warn arises where there is unequal knowledge, either actual or constructive, with respect to the risk of harm and the defendant, possessed of such knowledge, knows or should know that harm might occur absent a warning.
 
 
 27
 Vallejo v. Mercado, 220 Ill.App.3d 1, 162 Ill.Dec. 692, 699, 580 N.E.2d 655, 662 (1991) (citations omitted); see also Moore v. Powermatic, Div. of Stanwich Indus., Inc., 738 F.Supp. 1188, 1191 (N.D.Ill.1990) (applying Illinois law). In this case, because the counterweights' hazard was obvious, and Mr. Mason both knew of the dangers of turning counterweights and also how to brake the weights to make them safe, there was no inequality of knowledge between him and National about the danger of the pump. National therefore had no legal duty to warn Mason of what he already knew.
 
 Conclusion
 
 28
 For the foregoing reasons the judgment of the district court is affirmed.
 
 
 29
 AFFIRMED.
 
 ORDER
 
 30
 July 1, 1992.
 
 
 31
 On consideration of the petition for rehearing filed in the above-entitled cause by plaintiff-appellant on June 16, 1992, the judges on the panel have voted to deny the petition.
 
 
 32
 We have reviewed the recent opinion of the Supreme Court of Illinois in American National Bank v. National Advertising Co., No. 71135, 149 Ill.2d 14, 171 Ill.Dec. 461, 594 N.E.2d 313 (Ill.1992). Given the substantial factual differences between that case and ours, the holdings are compatible. Accordingly,
 
 
 33
 IT IS ORDERED that the petition for rehearing be, and the same is hereby, DENIED.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Section 343 of the Restatement directs that:
 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
 (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
 (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
 (c) fails to exercise reasonable care to protect them against the danger.
 Restatement (Second) of Torts § 343.
 
 
 [2]
 Section 343A of the Restatement directs that:
 (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 (2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.
 Restatement (Second) of Torts § 343A.
 
 
 [3]
 See Jakubiec v. Cities Service Co., 844 F.2d 470 (7th Cir.1988); Deibert v. Bauer Bros. Constr. Co., 141 Ill.2d 430, 152 Ill.Dec. 552, 566 N.E.2d 239 (1990); Ward v. K Mart Corp., 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990); see also Restatement (Second) of Torts § 343A, comment f
 
 
 [4]
 In his third amended complaint, Mr. Mason did allege that Ashland violated duties imposed upon it by the Occupational Safety and Health Act and federal regulations. R.76, Third Amended Complaint, Count I p 5, Count II, p 5. However, he did not argue this point in his Response to Ashland's Motion for Summary Judgment. R.124; R.162
 
 
 [5]
 See also Bally Export Corp. v. Balicar Ltd., 804 F.2d 398, 404 (7th Cir.1986); Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985)
 
 
 [6]
 Also, as will be discussed below, Illinois law imposes no duty on a manufacturer to guard or warn against dangers that are both inherent in a product and obvious to the user. Therefore, even if Ashland were a remanufacturer of the pump, and if Mr. Mason had not waived this issue, Ashland would not have a duty to Mr. Mason under Illinois negligence law to equip the pump with guards or to warn of its dangers
 
 
 [7]
 Presumably, the age of the pump at the time of the accident dictated Mr. Mason's decision to charge National only with negligence. See Ill.Rev.Stat. ch. 110, p 13-213(b) (limiting products liability actions based on strict liability to a period of twelve years from first sale by seller, or ten years from first sale to its initial user)
 
 
 [8]
 Even in the analogous field of strict liability for an unreasonably dangerous product, Illinois cases place no liability on a manufacturer for an injury caused by "inherent properties of a product which are obvious to all who come in contact with the product." Hunt v. Blasius, 74 Ill.2d 203, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1978); see also Scoby v. Vulcan-Hart Corp., 211 Ill.App.3d 106, 155 Ill.Dec. 536, 569 N.E.2d 1147 (1991) (no liability for obvious danger of an open deep fat fryer); McColgan v. Environmental Control Systems, Inc., 212 Ill.App.3d 696, 156 Ill.Dec. 835, 571 N.E.2d 815 (1991) (no liability for supplying opaque curtain to mine because opaqueness was an obvious and an inherent condition of the curtain); Clark v. Penn Versatile Van, 197 Ill.App.3d 1, 143 Ill.Dec. 708, 554 N.E.2d 643 (1990) (no liability for not providing seat or handgrips in van because of lack of seat or grips were inherent propensities of the van that were readily apparent); Lara v. Thoro-Matic Vacuum Systems, Inc., 194 Ill.App.3d 781, 141 Ill.Dec. 397, 551 N.E.2d 390 (1990) (no liability for placement of readily apparent cord on vacuum cleaner). Illinois case law indicates that the inquiry into whether a manufacturer has fulfilled its duty to produce a reasonably safe product is substantially the same under both negligence and strict liability regimes. Baltus v. Weaver Div. of Kidde & Co., 199 Ill.App.3d 821, 145 Ill.Dec. 810, 816, 557 N.E.2d 580, 586 (1990) (stating that the "threshold question" in design negligence, as in strict liability, "is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function"); Phillips v. United States Waco Corp., 163 Ill.App.3d 410, 114 Ill.Dec. 515, 519, 516 N.E.2d 670, 674 (1987) ("[T]he breach of duty is the same in both a negligence and strict products liability claim, but the key distinction between a negligence claim and a strict liability claim lies in the fault concept.... In a strict products liability claim, the focus is on the condition of the product, regardless of fault")
 We are aware that, in Lamkin v. Towner, 138 Ill.2d 510, 150 Ill.Dec. 562, 570, 563 N.E.2d 449, 457 (1990), the Illinois Supreme Court stated an alternate ground for demonstrating that a product is defective in design: by introducing evidence that the product's design proximately caused the plaintiff's injury and that on balance the benefits of the challenged design do not outweigh the risk of danger inherent in such designs. However, several lower court cases after Lamkin indicate that the "no liability for an open and obvious danger rule" survives. See Scoby, 155 Ill.Dec. at 540, 569 N.E.2d at 1151; McColgan, 156 Ill.Dec. at 837-38, 571 N.E.2d at 817-18.
 
 
 [9]
 In this important respect, Mr. Mason's case is distinguishable from those that he relies upon in his brief to argue that National had a duty to supply guards. See, e.g., Rios v. Niagara Machine & Tool Works, 59 Ill.2d 79, 319 N.E.2d 232, 234 (1974); Suich v. H & B Printing Machinery, Inc., 185 Ill.App.3d 863, 133 Ill.Dec. 768, 774, 541 N.E.2d 1206, 1212 (1989); Derrick v. Yoder, 43 Ill.Dec. 897, 410 N.E.2d 1030, 1034 (1980); Stanfield v. Medalist Indus., Inc., 34 Ill.App.3d 635, 340 N.E.2d 276, 277-78 (1975); Scott v. Dreis & Krump Mfg. Co., 26 Ill.App.3d 971, 326 N.E.2d 74, 80 (1975); Rivera v. Rockford Machine & Tool Co., 1 Ill.App.3d 641, 274 N.E.2d 828, 831 (1971). In all of these cases, the machine in question was found to be unreasonably dangerous because it functioned in an unexpected way, or had a dangerous feature that was unknown to the plaintiff